## HOWARD v. MASSACHUSETTS BONDING & INS. CO.
### Civil 34—306.

District Court, S. D. New York.

Jan. 7, 1947.

Emanuel Schwartz, of New York City, for plaintiff.

Clarke & Reilly, of New York City, for defendant.

BYERS, District Judge.

This is a defendant's motion for a directed verdict, made at the close of the case, and as to which decision was reserved. On December 19, 1946, the jury returned a verdict for plaintiff in the sum of $4,281.17, under instructions that the only question submitted to them was the amount of damage deemed to have been established, on the assumption that as a matter of law the plaintiff should prevail, but that as to such assumption the responsibility lay with the court.

The action was for breach of contract, namely, the failure of the defendant to defend in the name of the plaintiff any suit against him alleging injury and seeking damages on account thereof, "even if such suit is groundless, false or fraudulent" —according to the obligation to that effect under a certain Liability Policy issued by it to the plaintiff, bearing Number GS 1994, and covering the period of one year ended May 2, 1942.

This plaintiff for present purposes is to be deemed the Assured named in the policy. He was the proprietor of a summer camp for boys near Pawling, New York, during the policy year. In the month of August, 1941, one or two of the campers became ill, and by about the 23rd day of that month it became known to this plaintiff that the illness was poliomyelitis; he at once gave notice that the camp would be closed, which was effected on the following day by the evacuation of all campers, a few days prior to the end of the camping season.

On September 26, 1941, a summons was served upon him in an action in the Supreme Court of the State of New York by one Fisher as guardian ad litem for his two infant sons, who were campers that year, but no complaint accompanied the summons.

I am satisfied that the plaintiff was aware of the alleged basis of the suit at that time, but that fact has no present bearing. The summons was delivered in a day or so, to the plaintiff's broker who procured the insurance policy in question, and was forwarded by the latter to this defendant with a letter of explanation, dated September 30, 1941. The latter, through its resident attorney, procured an extension of time for appearance, and so advised this plaintiff, explaining in effect that this was done as a matter of courtesy only.

The complaint was served during the month of November, and the correspondence between these parties establishes that this defendant took the position that it was not obligated to defend that action since it did not fall within the coverage of the policy.

Whether it did, is the question of law which is involved in this case, because the Fisher action was defended by this plaintiff's own attorney, to such effect that it was dismissed for failure to prosecute, and judgment accordingly was entered on February 9, 1945, and affirmed by the Appellate Division, First Department, in October of that year. 269 App.Div. 932, 58 N. Y.S.2d 213.

The reasonable value of the plaintiff's outlay for counsel fees and expenses is reflected in the jury's verdict, which should be permitted to stand, if the defendant company indeed breached the contract embodied in the policy. A determination of that issue presents two questions:

First: The coverage of the policy.

Second: The nature of the Fisher action.

As to the policy, the pertinent provisions are:

Item 3 lists five divisions of hazards, and only the first is included. As to that, limits of liability are tabulated thus:

"Coverage A
"Bodily Injury
"Liability
"$20,000. each person
"$40,000. each accident"

Under Insuring Agreements the pertinent provisions are:

"I. *Coverage A—Bodily Injury Liability.* To pay on behalf of the Assured all sums which the Assured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, *caused by accident* and arising out of the hazards hereinafter defined." (Italics supplied.)

"II. *Defense, Settlement, Supplementary Payments.* It is further agreed that *as respects insurance afforded by this Policy* the Company shall

"(a) defend in his name and behalf any suit against the Assured *alleging such injury* or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;" (Italics supplied.)

Under the title "Conditions":

"5. *Assault and Battery.* Assault and battery shall be deemed an accident unless committed by or at the direction of the Assured.

"6. *Limits of Liability—Coverage A.* The limit of bodily injury liability stated in the Declarations as applicable to 'each person' is the limit of the Company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, including death at any time resulting therefrom, sustained by one person in any one accident. * * *"

"8. *Notice of Accident.* Upon the occurrence of an accident written notice shall be given by or on behalf of the Assured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Assured and also reasonably obtain-

able information respecting the time, place *and circumstances of the accident,* the names and addresses of the injured and of available witnesses. (Italics supplied.)

"9. *Notice of Claim or Suit.* If claim is made or suit is brought against the Assured, the Assured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

There is a list of Exclusions concerning hazards, not applicable to the risk assumed, and not pertinent to this case.

The coverage of the policy for present purposes then is bodily injury caused by accident, and arising from non-excluded hazards.

It is with reference to suits brought against the Assured for bodily injury caused by accident, that the duty to defend applies.

Turning now to the Fisher suit to ascertain whether it was such a case, it will be seen that the second amended complaint (Page 19 of printed record in that case, Plaintiff's Exhibit 18)—after alleging that this plaintiff owned and operated the camp, and that the Fisher boys were in attendance during July and August, 1941—avers:

(Par. 6) The fact that other boys during July and August, 1941, contracted infantile paralysis, to this plaintiff's knowledge.

(Par. 7) That in the exercise of ordinary prudence this plaintiff should have so informed the Fisher boys and their father, to permit their removal from contagion, and failure so to notify.

(Par. 8) That the said Fisher boys contracted the disease and were thereby rendered sick, and suffered some disabling effects.

(Par. 9) That the contracting of the disease by those boys "resulted wholly and solely from the negligence and lack of care on the part of defendants (i. e. this plaintiff) in permitting said children to remain at said camp as aforesaid".

(Par. 11) Alleges the father's damages to be $25,000.00.

The second cause as pleaded sets forth alleged misrepresentations to him concern- ing the nature of the illness that had affected one or more other boys some time during early August, 1941, which resulted in Mr. Fisher's permitting his own boys to remain in the camp, whereby they were exposed to and contracted the dread disease. Again $25,000.00 damages are alleged.

The third and fourth causes of action are in behalf of one of the Fisher boys, and the fifth and sixth causes in behalf of the other. The theory of these causes is the same as the father's two causes. See paragraphs 29, 40, 49, and 57. In all, damages were demanded to the extent of $125,000.00.

It is important to observe that there is no allegation that the outbreak of the disease was due to negligence. It is the act of this plaintiff in permitting the Fisher boys to remain in camp which was alleged to be negligent. It is not claimed that negligence attended the making of the representations upon which the Fishers apparently relied to sustain that aspect of their case. The alleged acts and omissions said to constitute negligence are stated in the Bill of Particulars, at page 45 of the said Record on Appeal, at Folio 135 et seq. It will be seen that in no aspect of the case can there be said to be an assertion that an accident occurred which caused the outbreak of infantile paralysis, nor that the failure to remove the Fisher boys from the camp, or cause the father to do that, was due to an accident.

The cases are clearly to the effect that the duty to defend is against litigation in which a recovery is sought from a policy-holder for a cause of action arising within the coverage of the policy.

London Guarantee & Accident Co. v. Shafer, D.C., 35 F.Supp. 647, at page 649, states the rule concerning the obligation to defend, in a case where failure to defend was one item in plaintiff's ultimate recovery.

American Fidelity Co. v. Deerfield Valley Grain Co., D.C., 43 F.Supp. 841. In this case it is decided that the duty to defend a lawsuit applies only to an asserted claim concerning which liability under the policy would attach; the exclusion from liability was in the express terms of the policy,

while here the absence of liability results from a failure to include anything but bodily injuries sustained by a person or persons caused by accident, but the result of course must be the same as to both categories of non-coverage.

Had the Fisher plaintiffs *alleged* injuries within the coverage, it would have been this defendant's duty to defend the suit, even though groundless: Longwell Lumber & Building Co., Inc., v. Maryland Casualty Co., 144 Misc. 595; 259 N.Y.S. 7.

Cornell v. Travelers, 175 N.Y. 239, 67 N.E. 578, is instructive, in that the causes which the insurance company refused to defend were not within the terms of the agreement alleged to have been breached. Judgment was for the defendant.

Taylor Dredging Co. v. Travelers Ins. Co., 2 Cir., 90 F.2d 449, 450, was such a suit as this, meaning that recovery was sought for attorneys' fees and expenses in a cause in which the indemnitor had refused to defend a case in which "no accidental cause exists. (page 450) * * * The cause was therefore not accidental." (page 451).

That indemnity agreement obligated the company to defend "any suits or other proceedings which may at any time be instituted against him * * *, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent"; it applied "only to such injuries (i. e. personal injuries) so sustained by reason of accidents occurring during the Policy Period". Judgment for defendant was affirmed.

See also Maryland Casualty Co. v. Moretz, Tex.Civ.App., 138 S.W.2d 1095; Lunt v. Ætna, 261 Mass. 469, 159 N.E. 461; Ocean Accident & Guarantee Corporation, Limited, of London, England v. Washington Brick & Terra Cotta Co., 148 Va. 829, 139 S.E. 513.

In the last mentioned case the court says at page 843 of 148 Va., at page 517

of 139 S.E.: "It is scarcely logical to hold that this provision (the defense clause) * * * would be intended to bind the insurer to take charge of and defend a suit in which, under the terms of the policy, it had no interest * * * it would result in compelling the insurer to waive its claim of non-liability * * * (the clause) must be read in connection with the fundamental contractual obligation."

The Fishers' suit was not a "groundless" one within the contemplation of this policy; it would have been, had those plaintiffs alleged that the two boys had contracted infantile paralysis as the result of bodily injury suffered in an accident in which they were involved (even though, so far as human intelligence is now informed, the outbreak of the disease could not have been so caused)—such a claim would indeed have been "groundless".

Sight has not been lost of the defendant's offer to defend that case through its own attorneys, if its non-liability under the policy were to be conceded by this plaintiff. That was the dictate of business expediency, rather than legal reasoning, and as things turned out, if availed of, would have saved this plaintiff the expenses of his defense; but the outcome of the litigation was then a matter of prophecy, and he was perhaps well advised to rely upon the diligence of his own attorney, which is well attested by the record in the Fisher litigation.

That the plaintiff himself comprehended the non-coverage of the policy may well be inferred from his failure to give notice to the defendant of an "accident" (Par. 8 of Conditions above quoted) at the time of the occurrence of the disease in camp, as to which he had knowledge on August 23, 1941, or at any time thereafter until the summons was served in the Fisher case on September 26th of that year.

It results that the defendant's motion for a directed verdict must be granted with costs. Settle order and judgment on notice.